him (plaintiff) to move out of the basement, that plaintiff put a lock on, that it was broken, and "it is thrown all my things out." Subsequently, however, he was asked, "When did you move your things from the basement?" and he replied, "They are still there." It appears that the plaintiff erected an oyster stand in front of the premises, which he was compelled to remove some three months after its erection; the plaintiff testifying that the defendant said: "The landlord don't want the stand outside." He further testified that he tried to put the stand in the basement, and "the board of health came and took it."

The testimony of conversations between the parties leading up to and prior to the making of the lease were incompetent and inadmissible as evidence, as all prior negotiations were merged in the written lease subsequently entered into between the parties. Daly v. Piza, 105 App. Div. 496, 94 N. Y. Supp. 154. Neither was it shown that the plaintiff was ever evicted from possession of the premises in question. It may also be said that the plaintiff utterly failed to prove any damages. Not a particle of competent testimony appears in the record, showing or tending to show that any damages were suffered by the plaintiff of any description. He says he paid $20 per month rent for October, November, and December; but, as he actually occupied the premises during that time, the payment of such rent could not be allowed as damages. When asked if he paid anything for that stand, and putting it up, he answered: "This cost about $200, $150, $175." This can hardly be considered a competent measure of damage, or testimony that would warrant the trial judge in rendering a judgment as he did for the sum of $150. The plaintiff wholly failed to make out a cause of action against the defendant as set forth in his complaint, the proof offered by him was insufficient to support one, and the judgment is erroneous, and must be reversed.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event. All concur.

---

(117 App. Div. 374)

PEOPLE ex rel. MARCH v. BEAM et al.

(Supreme Court. Appellate Division, Fourth Department. January 30, 1907.)

1. MANDAMUS—ELECTION—UNOFFICIAL BALLOTS—COMPELLING RETURN.

Election Law, Laws 1896, p. 933, c. 909, § 80, makes it a duty of the village clerk to provide official ballots for village elections; and section 106 declares that no ballot without the official indorsement shall be deposited in the ballot box, except as provided by sections 89 and 107, relating to cases where the ballots are not delivered in time or are insufficient, and declares that none but ballots provided in accordance with election laws shall be counted. Section 111 also requires that the inspectors, whenever unofficial ballots are voted, shall return all of such ballots in a package with the void and protested ballots. Held, that where inspectors of a village election, at which unofficial ballots were voted, counted the same and put them in the ballot box with the official ballots, which was returned to the village clerk, they could be compelled by mandamus to reject and return such unofficial ballots, as provided by section 111.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 33, Mandamus, §§ 150–157.]

**2. SAME—CERTIFICATION OF RESULT.**

Where inspectors of a village election wrongfully counted certain unofficial ballots, they could be compelled by mandamus to reconvene and reject such ballots and recertify the result of the election, leaving the persons then appearing to have a majority of the legal votes cast to assert their rights to their respective offices in some other proceeding.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 33, Mandamus, §§ 150–157.]

Appeal from Special Term.

Application by the people on the relation of Henry C. March, against Andrew J. Beam and others, as inspectors of election, and John R. Palmer, ballot clerk, of the village of East Rochester, for a writ of mandamus to compel them to recount and return the unofficial ballots voted at a village election held November 13, 1906, and to correct the statement of the results of the canvass of such election, and to make a proper certificate of such result. From an order granting the writ, defendants appeal. Affirmed.

The following is the opinion of Sutherland, J., in the court below:

The first election in the village of East Rochester was held November 13, 1906. The village had recently become incorporated under the provisions of the general village law, and the village clerk on the 31st day of October duly called and posted notices for such election to be held November 13th. November 3d a certificate of nomination was duly filed with the village clerk, signed by the requisite number of electors in said village to entitle the ticket thus nominated to be printed upon an official ballot. The certificate of nomination named Henry C. March as a candidate for president, Charles S. King and Jones R. De Ritter as candidates for trustees, B. J. Fryatt for treasurer, and Lee Ransom for collector: and the ticket was designated "People's Ticket," and the emblem chosen was a house. No other certificate of nomination of any candidate was filed. The village clerk caused an official ballot to be printed, with the necessary indorsement required by the statute, and said official ballot contained the names of the nominees of the "People's Ticket" in an appropriate column, and also a blank column, as required by statute, in which the voters could write the names of other persons if they so desired. At the opening of the polls on the day of election unofficial ballots for a ticket called the "Citizens' Ticket," headed by T. Joseph Mitchell as candidate for president, were handed to the inspectors of election by persons interested in securing the election of the so-called "Citizens' Ticket," and in spite of the protest of the watchers and supporters of the "People's Ticket" the inspectors did hand to voters, not only the official ballot, but the unofficial ballot aforesaid, and about 200 unofficial ballots were voted and received by the inspectors. At the close of the polls the inspectors were requested not to count the unofficial ballots, and a protest against said unofficial ballots was made upon the ground that they were void and were marked for identification; but the protests were ignored, and the unofficial ballots were counted, and the persons named therein declared elected, and a certificate of the result of the election was made and signed by the inspectors, in which the candidates upon the "Citizens' Ticket" were credited with the full amount of votes received upon the unofficial ballots, as well as votes which they received written in the blank column upon the official ballot. Had the unofficial ballots been thrown out, the "People's Ticket," headed by March, would have been elected. As it was, the "Citizens' Ticket" was declared elected, and the men named therein took the oath of office and are now acting as village officers.

Under section 80 of the election law (Laws 1896, p. 933, c. 909) it was the duty of the village clerk to provide official ballots for this election, which duty he performed; and section 106 of the election law provides as follows: "No ballot without the official indorsement shall be allowed to be deposited in the ballot box, except as provided by sections 89 and 107, and none but ballots provided in accordance with the election law shall be counted." The excep-

tions referred to are where the official ballots are not delivered at the time required, or are lost, destroyed, or stolen, or where the supply of official ballots is exhausted before the polls are closed. But in this case the official ballots were provided, and there was an abundant supply. Section 111 of the election law says: "Such inspectors shall, whenever unofficial ballots are voted, return all of such ballots in a package with the void and protested ballots." Instead of returning these unofficial ballots in a package with the original statement of the canvass, the inspectors in this instance put the unofficial ballots which they had counted in the ballot box with the official ballots which they had counted, sealed the box, and turned it over to the custody of the village clerk.

In this proceeding the relator asks for an order directing the inspectors to reconvene and make a correct statement of the result of the canvass, rejecting the unofficial ballots as void, and returning said unofficial ballots which had been voted in a package, as required by the statute, instead of leaving them in the ballot box; and I have no doubt of the power and duty of the court in this proceeding to grant the order asked for in this respect. Ever since the agitation in this state for a reform of the ballot found response in the "Saxton Law" and in the later legislative enactments on the subject, the courts have recognized that the official ballot is the keystone of the new structure, and that the explicit prohibition upon the use of unofficial ballots, except in the instances allowed by the statute, must be enforced, even if such enforcement in some cases results in the throwing out of the votes of honest citizens and the defeat of candidates favored by the majority; the greater interest of the people in the maintenance of the essential principles embodied in the reform measures being thus subserved. People ex rel. Nichols v. Board of Canvassers, 129 N. Y. 395, 29 N. E. 327, 14 L. R. A. 624.

It has been well said that in this proceeding the court cannot oust the de facto officers, who are now serving, and induct the petitioner and his associates in their places. What the court can do in this proceeding, and is bound to do, is to see that the inspectors of election follow the law and make a proper certification of the result. The persons who then appear to have received a majority of the legal votes can assert their rights to their respective offices, as they may be advised, in some other form of proceeding.

The application for a writ of mandamus is granted as to the inspectors, the form of the order to be settled on two days' notice, to take effect as of December 3, 1906, and the relator is allowed $30 costs and disbursements.

Merton E. Lewis and George S. McMillan, for appellants.
H. F. Remington, for respondent.

PER CURIAM. Order affirmed, with $10 costs and disbursements, on opinion of Sutherland, J., delivered at Special Term.

---

### WEST SIDE LAUNDRY CO. v. CALUMET HOTEL CO.

(Supreme Court, Appellate Term. April 10, 1907.)

1. ACCORD AND SATISFACTION—PART PAYMENT.

Accord and satisfaction is not shown by the fact that after summons, stating the claim as $88.86, was served, defendant sent a check for $18.83, which plaintiff retained; there being nothing to show that the check was not sent unconditionally, and with the understanding that liability for the balance should be determined by the result of the suit or by some adjustment.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 1, Accord and Satisfaction, § 46.]

2. EVIDENCE—SUFFICIENCY TO AUTHORIZE RECOVERY.

There is no evidence of value on which defendant, in an action for a laundry bill, can be given an allowance of part of the amount of its coun-